# UNITED STATES DISTRICT COURT
for the

District of Massachusetts

| | |
|---|---|
| Jamhol Talib Abdullah Bey <br> _Plaintiff(s)_ <br> (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) <br> -v- <br><br> Commonwealth of MA <br> _Defendant(s)_ <br> (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. _____ <br> _(to be filled in by the Clerk's Office)_ <br><br> Jury Trial: _(check one)_  ☐ Yes  ☐ No |

## COMPLAINT FOR A CIVIL CASE

I. **The Parties to This Complaint**

   A. **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: Jamhol Talib Abdullah Bey
   Street Address: 240 Broadway
   City and County: Pawtucket RI 02860
   State and Zip Code:
   Telephone Number: (401) 533-0827
   E-mail Address: RiseOfTheMoors@Gmail.com

   B. **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title _(if known)_. Attach additional pages if needed.

Defendant No. 1
  Name: Commonwealth of MA
  Job or Title (if known):
  Street Address: 305 South St.
  City and County: Jamaica Plain
  State and Zip Code: MA 02130
  Telephone Number: (617) 742-4528
  E-mail Address (if known): CIS@sec.state.MA.us

Defendant No. 2
  Name:
  Job or Title (if known):
  Street Address:
  City and County:
  State and Zip Code:
  Telephone Number:
  E-mail Address (if known):

Defendant No. 3
  Name:
  Job or Title (if known):
  Street Address:
  City and County:
  State and Zip Code:
  Telephone Number:
  E-mail Address (if known):

Defendant No. 4
  Name:
  Job or Title (if known):
  Street Address:
  City and County:
  State and Zip Code:
  Telephone Number:
  E-mail Address (if known):

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question        [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

28 USC §1331
2nd Amendment (US Constitution)
Article 3 Section 2 (US Constitution)

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a.  If the plaintiff is an individual

        The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b.  If the plaintiff is a corporation

        The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a.  If the defendant is an individual

        The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

    b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached (additional page)

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 2/12/24

Signature of Plaintiff: [signature]
Printed Name of Plaintiff: Jamhal Talib Abdullah Bey

### B. For Attorneys

Date of signing: 

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

[Print]  [Save As...]  [Add Attachment]  [Reset]

| | | |
|---|---|---|
| **Jamhal Talib Abdullah Bey** | V. | **THE COMMONWEALTH OF MASSACHUSETTS** |
| **Ex rel JAMHAL LATIMER** | | |

### Brief Description

This matter arises from a Massachusetts Superior court case.

11 men were traveling on a peaceable journey from Rhode Island to Main, they were stopped in Massachusetts, arrested and charged with the unlicensed possession of firearms, amongst other things.

The claimant filed several motions to dismiss based on second amendment protections.

The superior court denied said dismissals, one of which was based on a 2009 federal case stating the types of arms possessed did not receive 2nd amendment protections.

The prosecutor in the case alleges the defendants were not part of a militia because they were not part of a state-controlled militia.

The claimant's state of origin has no laws expressly prohibiting private militia training absent criminal intent, harm, insurrection, or civil unrest.

The claimant called the Sheriff of the town in Main where training was to be held and received oral permission to train on the privately owned land.

The claimant believes the types of arms are protected by the second amendment, the alleged conduct the commonwealth is alleging is also protected by the second amendment and the matter should be dismissed.

Claimant also believes that the United States Supreme Court Bruen decision clearly identified the Massachusetts licensing scheme as unconstitutional. Claimant believes that the severing of the unconstitutional portion of the statute and the retroactive application to 2021 falls within ex post facto law. A law that is applied after the fact. The statute was, at the time of the arrest unconstitutional and would have been unlawful, null, void and of no effect for the claimant to apply for a license under said constitutional provisions.

### Statement of Claim

Claimant believes there are grounds for raising one or more federal questions regarding the proceedings in the Commonwealths case: COMMONWEALTH v. Jamhal Talib Abdullah Bey No. 2181CR00361

Claimant believes there are grounds to raise the federal question regarding a decision made by Judge Deakin in the Woburn Superior Court. Related to firearms charges, which will be explained in further detail below under the section "Background." The claimant who is a defendant in the above cited case, in several motions, including the motion to dismiss, ruled on by Judge Deakin. Argues that the second amendment protects the alleged conduct and therefore, under Bruen, the charges should be dismissed. In Judge Deakins order, he agrees that the defendants conduct is protected by the second amendment. But, asserts that the types of arms have no second amendment protections, and for this reason the motion was denied.

Judge Deakin cited a California decision made in 2009 stating that the types of arms are weapons of war, are not commonly owned by law-abiders and fall outside of constitutional protection. On June of 2021, in

the federal case Miller v Bonta and one day after Judge Deakins decision, in Miller v Bonta of October 19, 2023, in conformity with the United States Supreme Court Bruen Decion, the federal court ruled that the types of arms emphatically fall within second amendment protections and are commonly owned by law-abiders .

With this being the crux of the lower courts decision to deny the dismissal. The claimants request that the federal courts hear arguments regarding the protections these types of arms receive. And after speaking with appointed counsel, other federal questions which may or may not arise from a lawyer's reviewing of the issues presented.

Claimant brought up this argument regarding the change of law in the California federal courts decision regarding the constitutional protection of the types of arms in this case to the trial judge. Rendering the 2009 decision cited by Judge Deakin as null and void, and requesting the court for a de novo review. To which the court ignored. The claimant also asserted, that a motion regarding the Commonwealth v Donnel was sent to counsel to be filed in August of 2023 shortly after the decision was made and never was filed and as a result of ineffective assistance of counsel, the claimant would request the opportunity to exhaust all procedural remedies and be given the chance to argue that the defendant is similarly situated to Donnel.

Claimant also believes, that since the time of the arrest July 3rd, 2021, the Massachusetts licensing scheme was unconstitutional. The United States Supreme Court Bruen decision clearly identified the Massachusetts licensing scheme as unconstitutional. Claimant believes that the severing of the unconstitutional portion of the statute and the retroactive application to 2021 falls within ex post facto law. A law that is applied after the fact. The statute was, at the time of the arrest unconstitutional and would have been unlawful for the claimant to apply for a license under said constitutional provisions.

Claimant asserts that this decision is dispositive of the case and will protect the defendant from irreparable harm.

## Background of the Case and additional arguments

On July 3rd 2021, in celebration of the role unorganized militias played in the war of independence and Moroccos contribution to the independence of the United States against Great Britain, While part of an indigenous group of aboriginal inhabitants of North America in the quest to obtain national independence and self-governance, in accordance with the United Nations Declaration on the Rights of Indigenous people, and the United Nations policy on nations right to self-autonomy, while part of the unorganized people's militia, 11 defendants were traveling on their peaceable journey from Rhode Island, where they were not prohibited from bearing arms, and at the time, there were no restrictions nor licenses required to open carry "long arms" nor restrictions on 30+ round magazines, nor licenses needed to purchase ammunition; to Maine; where they were not prohibited from bearing arms, there were, at the time, no licenses necessary to openly bear arms, nor to purchase ammunition, nor to own 30+ round magazines.

The Militias leader, who legally purchased his arms after and only after passing a state and federal background check from the state of Rhode Island at the licensed arms dealer "Lost Treasure's" located in Pawtucket Rhode Island, accompanied with 10 other volunteer militiamen, who, according to federal law, were of proper age for Militia service; were headed north bound on the interstate highway route 95.

While stopped on the side of the road, before anyone of the militia exited their vehicles, a call over our private radio network was relayed to the platoon leader that there was an unidentified vehicle approaching from the rear.

In accordance with their Militia training, the militia men, in defense of their lives, while confronted by an unknown individual, began to exit their vehicles to preserve their lives.

The militia was confronted by Trooper Ryan Casey and notified him that they were traveling from Rhode Island, to Maine to conduct a training exercise and only stopped to add fuel to their vehicles.

According to Trooper Casey's sworn testimony, upon seeing what he believed were firearms, with no additional information, he began his investigation and prolonged what he called a "stop" in order to get more police officers on the scene to take the militiamen into custody before knowing if there was a crime that took place.

The Militia was then held hostage for 11 hours on the highway by the Paramilitary force of the commonwealth of Massachusetts for exercising their second amendment rights. The platoon leader was initially arrested for "disorderly conduct" according to the police arrest report and some how charged with weapons charges repugnant to the second amendment.

The prosecution alleged that the initial contact was "community care taking" but pursuant to res judicata of the Commonwealth, absent any actual danger, not merely the possibility of danger, community care taking cannot turn into an active investigation. According to the sworn testimony of Trooper Ryan Casey, his investigation started within the first 3 minutes of the "community caretaking." All he knew at the time was 1. The militia did not need his assistance; 2 the militia was fueling their lead vehicle; 3 the militia had no intentions of staying in Massachusetts; and 4 the militia was coming from Rhode Island. Other than this, Casey observed what he believed to be firearms and launched his investigation, although illegal according to res judicata of the commonwealth which clearly states knowledge of firearms alone does not give rise to a reasonable suspicion nor probable cause under the 4th amendment.

As a result of the arrest, claimant and 10 codefendants were charged with possession of large capacity weapons, possession of large capacity feeding devices, improper storage of large capacity weapons to which a person under 18 had access, improper storage of a large capacity weapon to which a person under 18 had access, possession of firearms, possession of a rifle, improper storage of a rifle to which a minor had access, possession of a shotgun, possession of a loaded firearm, using or wearing body armor during a felony, possession of ammunition, conspiracy to possess firearms, and giving police a false name following an arrest.

United States law 10 USC 311 establishes the age of 17 as proper for militia service, thus, showing on its face the existence of an affirmative defense to the charge of improper storage of a firearm where a minor had access, as that minor, according to federal law, is the proper age for militia service. And militia service requires access to arms.

In regards to "Firearms possession of Large Capacity" **c269 § 10(m)**; Firearms carry without license **c269 § 10(a)**; Firearm store improp large capacity near minor **c140 § 131L (a) & (d)**; Rifle / Shotgun, store improp near minor **140 § 131L (a) & (c)**; Body Armor, use in Felony **c269 § 10D**; Conspiracy **c274 § 7**; Firearm, carry without licenses loaded **c269 § 10(n)**; Ammunition without a FID card posess **c 269 § 10 (h)(i)** - We qualify for exemption pursuant to **Mass General Law 140 § 129 c(m)**: *The provisions of this section shall not apply to the following exempted persons and uses: **(m)** The temporary holding, handling or firing of a firearm... where such holding, handling or firing is for a lawful purpose; and **(o)**Persons in the military or other service..* the arms were held for lawful purposes as our conduct falls within the plain text and history of the 2nd Amendment. As declared by the United States Supreme Court: New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. *This definition of "bear" naturally encompasses public carry... The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees... In keeping with Heller, we*

*hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. ... In Tennessee, the state's highest court offered its interpretation of the right to bear arms eleven years after Bliss. See Simpson v. State, 13 Tenn. (5 Yer.) 356 (1833), cited in Heller, 554 U.S. at 585 n.9. After he was convicted of ... appearing armed in public, Simpson faulted the indictment for failing clearly to require proof of actual violence. Id. at 357–58. The high court agreed, because—even assuming that colonial law did not require proof of actual violence to punish colonists for walking with weapons—the Tennessee "constitution ha[d] completely abrogated it." Id. at 360. No such prohibition could survive the state constitution's grant of "an express power . . . secured to all the free citizens of the state to keep and bear arms for their defence, without any qualification whatever as to their kind or nature." Id. Absent an act of violence, then, Simpson's indictment for merely carrying firearms could allege no crime tolerable to the constitution of Tennessee.* The prosecutor is simply charging us with keeping and bearing arms in public, the very conduct specifically protected by the plain text of the second amendment. This means that the issue before you honorable jurists is to decide if our conduct, according to the standards established by the United States Supreme court, falls within the plain text of the second amendment. And the prosecutor must justify its enforcement of these statutes against us, and I quote the supreme court directly on this: *not simply*[stating] *that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."* Konigsberg v. State Bar of Cal., 366 U.S. 36, 50, n. 10 (1961).

Massachusetts General Law Title V Chapter 33 **§ 3** makes direct reference to federal law 10 USC 311 and specifies that the militia shall consist of the two classes known as, the organized militia and the unorganized militia.

Massachusetts General Law Title V Chapter 33 **§ 1** makes it clear that the military forces of the commonwealth includes the organized and unorganized militia.

Massachusetts General Law Title V Chapter 33 **§ 53** provides that persons in the militia are exempt from criminal and civil liability.

In Silveria v Lockyer 328 F 3d 567, the federal court goes into detail, providing the federal definition of the 2nd amendments constitutional militia, and defines the unorganized militia as all able bodied men ages 17-45, whether under state government supervision or not. The federal court further stated that a militia does not have to be in a collective state service to fall within 2nd amendment protections and exemptions. I quote the court in its historical analysis: *"Thus, contrary to the "collective rights" notion in the panel opinion, the militia was precisely not "a state entity, a state fighting force," limited to those who are active members of such a collective organization... the Second Amendment was written in part to avoid the necessity of standing armies, and protect the citizenry against standing armies, precisely the opposite of requiring that only members of formally organized standing collective government organizations have guns... Thus, as used in law, the meaning of the word has not changed significantly, other than to grow more inclusive. It is, and always has been, emphatically the case that militia members do not have to be "organized" in a "collective" state service, because the statute provides expressly for the existence of the "unorganized" militia. Members of the National Guard are in the "organized militia," and those not in the National Guard are also in the "unorganized militia."* This definition proves that the information provided by Van Epps to the juris was false. And by definition, our conduct falls within the 2nd amendments protection.

The federal courts further assert in United States v Yunis that a militia is a military organization only if the group has a hierarchal command, which the prosecutor has identified me as the leader on several occasions. The court stated that its conduct of operation must be in accordance to the laws and customs of war, which

we are clearly in a time of peace and none of our actions were war like nor terroristic in nature. The federal courts states that its members must have a uniform, and lastly, the militia must carry arms openly. This very description of a second amendment militia, is exactly what we are being charged with. This, according to the United States supreme court, presumptively protects our conduct.

In Drake v Filko 724 F. 3d 426, the federal court explained how the second amendment grants a right to bear arms outside the home.

In Parker v D.C. 428 F3d 370, the federal court explains how the second amendment protects the private use of arms and arms in connection to militia service. The court in its historical analysis argued that *"the District claims a militia did not exist unless it was subject to state discipline and leadership... is just too narrow.... THE FEDERALIST NOS. 8, 28, 59 (Alexander Hamilton), No. 46 (James Madison) (arguing that an armed populace constitutes a check on the potential abuses of the federal government) with MELANCTON SMITH [Federal Farmer], OBSERVATIONS TO A FAIR EXAMINATION OF THE SYSTEM OF GOVERNMENT PROPOSED BY THE LATE CONVENTION, AND TO SEVERAL ESSENTIAL AND NECESSARY ALTERATIONSIN IT (Nov. 8, 1787), reprinted in THE ORIGIN OF THE SECOND AMENDMENT, supra, at 89, 91.* This judge in his dissent, which was reaffirmed 1 year later by the United States supreme court in Heller, argued that the second amendment has always been an individual right.

In the federal court case Miller v. Bonta Case No.: 19-cv-1537-BEN (JLB). Decided June 4th, 2021, one month before our arrest. The Judge made it clear that AR-15 style rifles and their standard 30 round magazines, which this state erroneously refers to as large capacity, are protected by the second amendment as they and their 30 rounds magazines are standard and owned by millions of Americans for lawful purposes. The court makes reference to retired Arm General Youngman's testimony, on how this type of rifle with its 30 round magazines are ideal for militia use, effectiveness and rediness. In the federal judges decision, a paragraph titled Militia use, I quote the court on the following: *The concept of the citizens' militia, as protected by the Second Amendment, is an informal assembly of able-bodied, ordinary citizens acting in concert for the security of our nation. Heller, 554 U.S., at 600, 128 S.Ct. 2783 ("citizens' militia" is a safeguard against tyranny). "[T]he Militia comprised all males physically capable of acting in concert for the common defense." Heller, 554 U.S., at 595, 128 S.Ct. 2783. There are at least two reasons why the militia is thought to be necessary to the security of a free country. First, it is useful in repelling invasions. Second, "when the able-bodied men of a nation are trained in arms and organized, they are better able to resist tyranny." Heller, 554 U.S., at 597–98, 128 S.Ct. 2783. For service in the citizens' militia, one is expected to bring for action a commonly used firearm such as a gun used for self-defense at home or for hunting game."*

With this explanation we can see the diction between, as an example, service in the organized and unorganized militias. If you were to join an organized state militia, they would provide you with a government issued service rifle, not owned by you, but assigned to you only for your term of service and must be returned upon discharge. Yet, in a private militia, you are required to furnish your own. The court continued: *In this case, the evidence overwhelmingly shows that AR-15 platform rifles are ideal for use in both the citizens' militia and a state-organized militia. Quite apart from its practicality as a peacekeeping arm for home-defense, a modern rifle can also be useful for war. In fact, it is an ideal firearm for militia service. Major General D. Allen Youngman, U.S. Army (retired) testified credibly about the usefulness for militia service of rifles built on the AR-15 platform... Youngman's testimony is uncontroverted. Youngman is very well qualified to opine on the usefulness of an AR-15 for militia use. He has served in the regular army and the army reserves. He served as Kentucky's Adjutant General commanding the state's national guard. He is a firearms trainer and armorer. He was a member of the bar and worked as a prosecutor. His opinion that an AR-15 is an ideal firearm for use in a militia is unequivocal and uncontested... Citizen*

*Militias are not Irrelevant - Before the Court there is convincing and unrebutted testimony that the versatile AR-15 type of modern rifle is the perfect firearm for a citizen to bring for militia service.*

In the courts reference to AR-15's it explains that it includes its standard 30 round magazines and that they too are protected by the second amendment. And I quote the court: *"The fact that a statistically significant number of Americans use AR-type rifles and large-size magazines demonstrates ipso facto that they are used for lawful purposes."* This clearly indicates that we fall within the operative clause of "lawful purpose" of statutory exemptions of **Mass General Law 140 § 129 c(m):** *The provisions of this section shall not apply to the following exempted persons and uses: (m) The temporary holding, handling or firing of a firearm... where such holding, handling or firing is for a lawful purpose.*

In Colombia b Heller 128 S.Ct 2783 171, L Ed 2d 637. The United States Supreme Court stated that the second amendment "guarantees" the right to possess and carry weapons in case of confrontation.

In United States v Peterson 483 F2d 1222. The court stated "the virtue of retreat.. yields to the urgency of self-preservation.

Commonwealth v Alvarado 423 Mass 266. Supreme Judicial Court of Massachusetts. Carrying a gun is not a crime... This court held in Commonwealth v. Couture, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990), that, under the Fourth Amendment, "[t]he mere possession of a handgun was not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying that gun."

Brumley v Commonwealth 413 S.W. 3d 280, ky "Knowledge of firearms... alone... does not create reasonable suspicion..."

Commonwealth v Kelly 484 Mass 53. Carrying... a weapon is not, standing alone, an indication that criminal conduct has occurred or is contemplated.

Nordyke v King 563 F.3d 439: "Self-preservation is commonly called the first law of nature... Self-preservation cannot be repealed, or superseded or suspended by any human institution."

Samuel Adams in his report to the Committee of Correspondence to the Boston Town meeting in 1772: "the duty of self-preservation [is] the first law of nature"

Selective Draft Law 254 U.S. 366: "The highest duty... is to bear arms... This duty is inherent... without it... society could not be maintained."

United States v Miller supra at 178: The Supreme Court stated that the purpose of the second amendment was "to preserve the effectiveness of militias."

Moore v Madison 702 F3d 933: "armed self-preservation [is] a fundamental natural right... a right to possess guns for resistance, self-preservation, self-defense and protection against both public and private violence."

Barneblatt v United States 360 U.S. 109: "Self-preservation [is] the ultimate value of society."

District of Columbia v. Heller, 554 U.S. 570 (2008): "Americans understood the right of self-preservation as permitting [one] to repel force by force when the intervention of society in his behalf may be too late to prevent injury."

United States v Jemenez-Shilon. May 23rd, 2022. No. 20-12139. Newsom, Circuit Judge: See Charles, Armed in America , supra , at 94; The Complete Bill of Rights , supra , at 275 (documenting the Massachusetts proposal that Congress be barred from "prevent[ing] the people of the United States, who are peaceable citizens, from keeping their own arms," as well as the New Hampshire proposal that "Congress shall never disarm any Citizen unless such as are or have been in Actual Rebellion").

The Second Amendment seems to have codified this principle. See Heller , 554 U.S. at 592–93, 599, 128 S.Ct. 2783. "It was understood across the political spectrum that the right" to keep and bear arms "helped to secure the ideal of a citizen militia, which might be necessary to oppose an oppressive military force if the constitutional order broke down." Id. at 599, 128 S.Ct. 2783. At the same time, it helped to secure the citizen's right to self-defense when his government was unable (or unwilling) to protect him from private lawlessness. [Several Federal Court cases have already decided that the Federal, State and Local (Municipal / County, City and Towns) governments, which includes State and Local Police, have no duty to protect an individual. i.e., "his government is unwilling to protect him from private lawlessness." See Munger v City of Glassgow Police 227 F 3d 1082: "a police officer generally has no duty to protect a particular individual…"; Taylor v Phelan 9 F 3d 882; So v Bay Area Transit 2013 U.S. Dist Lexis 149807; Hernandez v City of San Jose 14 Cal App 4th 129: "the police have no duty to protect individuals from private wrongdoers."; White v Duchford 592 F 2d 381: "There is no general duty to provide police protection to the general public."; and United States v Duguay 93 F 3d 346: "The state owes no legal duty to protect things outside its custody from private injury."]

The Supreme Judicial Court of Massachusetts has held that there is no individual guarantee of individual ownership or possession of weapons. In Commonwealth v. Depina, the court rejected defendant's challenge to a statute prohibiting carrying of a firearm in public without a license. In Commonwealth v. Davis, the court rejected defendant's challenge to a state law prohibiting the possession of a short-barreled shotgun. In both cases, the court reasoned that the constitution was intended to provide for the common defense and does not guarantee an individual right to keep and bear arms. According to the court, each statute was "part of a large regulatory scheme to promote the public safety, and there is nothing to suggest that, even in early times, due regulation of possession or carrying of firearms, short of some sweeping prohibition, would have been thought to be an improper curtailment of individual liberty or to undercut the militia system." In Chief of Police of Shelburne v. Moyer, the Massachusetts Court of Appeals concluded, consistent with Davis, that a statute requiring a person to have a license in order to carry a firearm did not violate the constitution because "[t]here is no right …for a private citizen to keep and bear arms and thus to require that a citizen have a license to do so is not unconstitutional."…

Clearly with the Heller courts decision, according to the Massachusetts court of appeals, since there is an individual right to keep and bear arms, any law requiring a citizen to have a license is in fact unconstitutional. Even in Bruens historical analysis, which the supreme court references Young v Hawaii, it clearly shows how several individuals were addressed for bearing arms in public and their cases were either reversed or thrown out as simply bearing arms in public is not a crime absent other behavior. The court also shows how the general public never needed any form of special permission to keep and bear arms openly in public. A license, by definition, is special permission, and the courts in their historical analyst of firearms regulation, clearly show that only negro-slaves and white anomalists were unlawfully required to have a license to bear arms. These laws originate in slavery and are by default unconstitutional as they never applied to a free people.

The government argues that the state statutory regulatory scheme is for public safety. Yet, the United States supreme court has already decided that a license tax on a right that is free and open to all is an infringement. See Murdock v. Pennsylvania, 319 U.S. 105 (1943). *A State may not impose a charge for the enjoyment of a right granted by the Federal Constitution. The court argued further that [a] license tax… restrains in advance Constitutional liberties and inevitably tends to suppress their exercise… The cases present a single issue -- the constitutionality of an ordinance which, as construed and applied, requires [an individual] to*

*pay a license tax as a condition to the pursuit of their [constitutionally protected] activities... It is a license tax -- a flat tax imposed on the exercise of a privilege granted by the Bill of Rights. A state may not impose a charge for the enjoyment of a right granted by the Federal Constitution.*

By definition, in Henry Campbell Black's Law dictionary, page 1070 *a license tax* is defined as: "A license imposed in the exercise of ordinary police power of the state." The licensing regulatory scheme grants the police the power to issue these licenses. And by definition and operation, constitute an infringement and are unconstitutional. Murdock Supreme court further stated: A license tax applied to activities guaranteed [by an] Amendment would have [a] destructive effect... The power to impose a license tax on the exercise of these freedoms ... this Court has repeatedly struck down.
This completely supports bruen in the courts assertion that *The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees."* Since the Supreme court strikes down the power to impose licenses on the first amendment, it is implied that all impositions of licenses on every other amendment is unconstitutional.

The crux of Deakins denial rests on his assertion that: "Assault rifles, such as those carried by Bey and his co-defendants, are weapons of war." (See page 13-15 of Deakins order.) Because he has already stated that my conduct falls within the scope of constitutional protection. His only argument is that the types of arms I bore were not constitutionally protected. But this is contrary to the ongoing development of legal decisions, especially those decision such as the one in California where these alleged "Weapons of War" are called by the federal courts as "home defense weapon and homeland defense equipment."
On page 9 and 10 of Deakins order Deakin himself states: "Thus, I accept... that the plain language of the Second Amendment covers the defendants alleged conduct in this case. The defendants are, after all, accused of unlawfully "keep[ing] and bear[ing] arms."

There was no expression on precisely how I was exercising my right to keep and bear arms outside of the lawfully stated conduct. The court nor the prosecutor have shown how my conduct falls outside the stated purposes of the second amendment, which is, according to the United States Supreme Court the right exists for the purposes of confrontation. Which we were confronted in low visibility, by an unknown vehicle. But once the person was identified, the police and prosecutor themselves stated our conduct was cordial:

"At the time of the founding, as now, to "bear" meant to "carry." See Johnson 161; Webster; T. Sheridan, A Complete Dictionary of the English Language (1796); 2 Oxford English Dictionary 20 (2d ed. 1989) (hereinafter Oxford). When used with "arms," however, the term has a meaning that refers to carrying for a particular purpose—confrontation... Thus, the most natural interpretation of Madison's deleted text is that those opposed to carrying weapons for potential violent confrontation would not be "compelled to render military service," in which such carrying would be required... Meaning of the Operative Clause. Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right."
Thus, Deakin made an error of law by stating the logical fallacy that legally purchased arms, that were only acquired after passing a state and federal background check, are not the types of arms typically possessed by law-abiders. Ironically enough, he cites case-law from California in 2009 to support this claim. Yet the California federal courts more recently, assert that these alleged "weapons of war" are:
*Plaintiffs are law-abiding citizens who want to possess (or keep) and carry (or bear), firearms like the AR-15 rifle that are commonly-owned for lawful purposes. The conduct is covered by the plain text of the Second Amendment. Therefore, Plaintiffs have met their burden of showing that the prohibited firearms fall within the text of the Second Amendment.... At the same time these firearms are commonly possessed by law-abiding gun owners elsewhere across the country... In their normal configurations, the so-called "assault weapons" banned in California are modern firearms commonly-owned by law-abiding citizens*

*for lawful purposes across the nation... That AR-15s are commonly owned and number in the millions across the nation and are rarely used to commit crimes, is detailed in depth in this Court's prior decision. See Miller v. Bonta, 542 F. Supp. 3d 1009, 1020–21 (S.D. Cal. 2021); see also Suppl. Klarevas Decl. at ¶ 15 and n.13... Unless the Supreme Court clearly says otherwise, commonly owned weapons that may be useful for war and are reasonably related to militia use are also fully protected, so long as they are not useful solely for military purposes...*
Dated: October 19, 2023
HON. ROGER T. BENITEZ
Senior United States District Judge
https://assets.nationbuilder.com/firearmspolicycoalition/pages/5381/attachments/original/1697737480/2023.10.19_175_OPINION.pdf?1697737480
*"More Popular than the Ford F-150 Pickup Truck Modern rifles are popular. Modern rifles are legal to build, buy, and own under federal law and the laws of 45 states. There are probably more modern rifles in circulation than there are Ford F-150 pickup trucks.... "[W]e note that in 2012, the number of AR- and AK-style weapons . . . was more than double the number of Ford F–150 trucks sold, the most commonly sold vehicle in the United States." Kolbe v. Hogan, 813 F.3d 160, 174 (4th Cir. 2016), on reh'g en banc, 849 F.3d 114 (4th Cir. 2017).... : is a modern rifle commonly owned by law-abiding citizens for a lawful purpose? For the AR-15 type rifle the answer is "yes."*
ROGER T. BENITEZ, United States District Judge 2021-06-04
https://casetext.com/case/miller-v-bonta

According to Ruggiero v. Police Comm'r of Boston, 18 Mass. App. Ct. 256, 258 (1984) (*"goal of firearms control legislation is to limit access to deadly weapons by irresponsible persons.*) Every arm that I have owned in my entire life, was purchased from Lost Treasures, a licensed arms dealer in the state of Rhode Island. The arms that I purchased required me to pass a state and federal background check. After a 7-day period, and passing the background check, proving that I'm not a criminal prohibited from exercising the second amendment. Rhode Island law, which, at the time of my purchase, not only didn't not require a gun license to purchase arms, the State had no laws prohibiting the open carry of "long rifles". The State allowed the purchase of standard 30 round magazines and magazines of other capacity. In fact, the 100 round and 50 round drums were also purchased from licensed arm dealers in Rhode Island and the state that we were going to, Maine, had similar laws to Rhode Island which allowed higher capacity magazines. This situates me outside of the category of "*irresponsible persons*", and "*unauthorized users*" as stated in COMMONWEALTH vs. AMAURY REYES. 464 Mass. 245 October 1, 2012 - January 29, 2013. Coupled with the fact I am an active duty Marine Corps veteran and my experience from approximately age 14-17 years old in the Providence Police explorers program, which required us to handle police service pistols at times. I'm further positioned outside of the states legislative intent to prohibit *inexperience*[d], *unauthorized* and *irresponsible persons*.

Furthermore, not only did the police ask us to improperly store our arms in the vehicles. The legislative intent behind requiring arms to be locked in vehicles, is to prevent unauthorized and irresponsible persons other than the owner from gaining access to the arms. I am the owner of my own arms, and after passing a background check, coupled with my 4 years active-duty Military experience, I cannot be prohibited from accessing my own lawfully acquired arms and I'm qualified to handle arms.

I have not been convicted of anything and I am therefore not a law-violator just like the defendant in the Coffey decision. We both were abiding by the laws of our respective state at the time of our arrest, and I have never been convicted of any crimes. Yet when entering Massachusetts, we somehow become instant felons. Not only was I abiding by the laws of my state, but I was abiding by the laws of the state of my final destination. See Coffey's decision: *"An individual only loses a constitutional right if he commits an offense or is or has been engaged in certain behavior that is covered by 18 USC section 922. He doesn't lose that right simply by traveling into an adjoining state whose statute mandate that residents of that state obtain a*

*license prior to exercising their constitutional right. To hold otherwise would inexplicably treat Second Amendment rights differently than other individually held rights. Therefore, the Court finds that GL. 269, sec. 10(a) in unconstitutional as applied to this particularly situated defendant and Allows the motion to dismiss on that ground."*

Deakin himself states: *"Thus, I accept... that the plain language of the Second Amendment covers the defendants alleged conduct in this case."* Therefore this matter must be dismissed.
Sherar v. Cullen, 481 F. 2d 946 (1973) *"the obvious concern that there be no sanction or penalty imposed upon one because of his exercise of constitutional rights.* See Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

Simmons v. United States, 390 U.S. 377 (1968) *"The claim and exercise of a Constitution right cannot be converted into a crime"... "a denial of them would be a denial of due process of law".* Miller v. U.S., 230 F. 2d. 486, 490; 42 *"There can be no sanction or penalty imposed upon one, because of his exercise of constitutional rights."* Murdock v. Pennsylvania, 319 U.S. 105 *"No state shall convert a liberty into a license, and charge a fee therefore."*

## Relief Sought

Claimant asks the courts to:

1.      Determine the constitutional protections of A.R. 15 style arms, high-capacity magazines, and private unorganized militias. Claimant requests the court to make a ruling on whether or not the "unorganized militia," "people's militia," "citizens militia" is the people who possess their own arms; and at times, may, at their own discretion, train to use those arms while exercising their 1st amendment right to assemble and associate with others and self identify as a militia with second amendment protections.

Claimant request relief through the federal courts determining the 2nd amendment protections of the types of arms described in the commonwealths case and if in favour of the claimant, claimant requests the return of his property, arms, and vehicles, as well as compensation for time spent in jail, money placed on commissary, money placed on phone calls and emotional duress as a result of arrest, charges in the commonwealths case and confinement in jail to the sum of $150,000.

2.      Determine if a statute severed of its unconstitutional provisions is ex post facto when retroactively applied to an arrest before the unconstitutional portions were removed.

3. Reverse the denial of the Superior courts dismissal based on the fact that the conduct and arms fall within second amendment protections.

Claimant also requests the court to stay the superior court trial that is scheduled between February 26 and February 28th, 2024, for the reasons expressed above.

**Signed:** *Jamhal Talib Abdullah Bey*